**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Smith*, **Slip Opinion No. 2022-Ohio-840.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-840

DISCIPLINARY COUNSEL *v*. SMITH.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Smith*, Slip Opinion No. 2022-Ohio-840.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension, with the final six months stayed on conditions.*

(No. 2021-0448—Submitted September 21, 2021—Decided March 23, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-015.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Samuel Ray Smith II, of Cleveland, Ohio, Attorney Registration No. 0076242, was admitted to the practice of law in Ohio in 2003. On December 6, 2017, we suspended him from the practice of law for 18 months, with the final 12 months stayed on the condition that he engage in no further misconduct. *Disciplinary Counsel v. Smith*, 152 Ohio St.3d 131, 2017-Ohio-8821, 93 N.E.3d 955, ¶ 8. In that case, Smith admitted that he had neglected a client's appeal, failed

to deposit advanced fees into his client trust account, made a false statement to a court, and made misrepresentations to disciplinary counsel during the disciplinary proceedings. *Id.* at ¶ 4. We reinstated him to the practice of law on June 26, 2018. *Disciplinary Counsel v. Smith*, 153 Ohio St.3d 1221, 2018-Ohio-2468, 104 N.E.3d 783, ¶ 3.

**{¶ 2}** In a second amended complaint filed in May 2020, relator, disciplinary counsel, charged Smith with 19 ethical violations arising from his conduct in four separate client matters. Among other things, the complaint alleged that Smith had signed and filed a plea-in-absentia form on behalf of a client without the client's permission and that he had falsely notarized the form, failed to deposit advanced fees into his client trust account, failed to act with reasonable diligence and provide competent representation, failed to comply with the requirements of his previous suspension order, and failed to take reasonable steps to protect his clients or to refund the unearned portions of their fees upon the termination of the representation.

**{¶ 3}** The parties submitted stipulations of fact, and Smith admitted that he had committed seven rule violations. After conducting a hearing, a three-member panel of the Board of Professional Conduct issued a report finding that Smith had committed eight additional rule violations and unanimously dismissing four others alleged violations. Based on those findings of misconduct, the panel recommended that Smith be suspended from the practice of law for two years, with six months conditionally stayed. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 4}** Smith objects to the board's findings that he committed the contested violations and argues that the appropriate sanction for his stipulated misconduct is a fully stayed two-year suspension. For the reasons that follow, we overrule Smith's objections and adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Count One—The Lattimore Matter*

**{¶ 5}** In 2017, Smith was appointed to represent Stacy Lattimore in multiple criminal cases. In June 2017, he met with her at the Cuyahoga County jail, where she was serving a sentence following her conviction for a separate offense. During that meeting, Smith presented Lattimore with a standard plea-in-absentia form by which she could change her pleas in several cases from not guilty to guilty or no contest, but Lattimore did not sign the document. Thereafter, at his office, Smith signed Lattimore's name to the document and notarized it—falsely stating that it had been subscribed and duly sworn before him by Lattimore and without noting that he had signed her name or whether he had obtained her consent to do so—and then filed it with the court.

**{¶ 6}** Neither Lattimore nor Smith was present when the court relied on the plea-in-absentia form to accept a no-contest plea in one of Lattimore's cases and guilty pleas in several other of her cases. The court sentenced Lattimore to an additional, aggregate 540 days of incarceration, imposed fines totaling $1,850, and permanently banned her from entering certain retail establishments.

**{¶ 7}** At Smith's disciplinary hearing, Lattimore and Smith offered conflicting testimony regarding Lattimore's consent to the changes of her pleas. Lattimore testified that she had refused to sign the plea-in-absentia document, did not give Smith permission to sign the document for her, and told him that she no longer wanted him to represent her. Smith claimed that he had signed the form with Lattimore's authorization.

**{¶ 8}** Finding that it was "unable to determine whether [Lattimore] was a serial offender who authorized the plea in absentia to test the waters on sentencing or an innocent who was unaccountably wronged by her lawyer," the panel unanimously dismissed the corresponding alleged violation of Prof.Cond.R. 1.2 (requiring a lawyer in a criminal case to abide by the client's decision as to the plea

to be entered). Nevertheless, the panel and the board found that by signing and notarizing the form without noting that he had signed the document on Lattimore's behalf, Smith violated Prof.Cond.R. 3.3(a) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 9} In his first objection, Smith objects to the board's findings of misconduct with respect to this count. He argues that any finding that he "misrepresented the plea agreement to the [c]ourt or engaged in dishonesty or conduct that was prejudicial to the administration of justice is inconsistent" with the board's dismissal of the alleged violation of Prof.Cond.R. 1.2. But Smith has stipulated that he notarized the plea-in-absentia form—with the notarization stating that Lattimore had personally appeared before him and had subscribed her name to the document—when in fact he had signed her name to the document and then notarized the signature without indicating that the signature was not Lattimore's. Smith has therefore admitted facts sufficient to support the board's findings that he violated Prof.Cond.R. 3.3(a), 8.4(c), and 8.4(d). We therefore overrule Smith's objections regarding those findings and adopt the board's determination that his conduct violated those rules.

*Count Two—The McLeod Matter*

{¶ 10} On March 31, 2016, Colette McLeod, as the fiduciary of her late father's estate, hired Smith to file a civil action to recover property that had belonged to her father, which allegedly had been misappropriated from the estate. McLeod signed a fee agreement with Smith that provided for a flat fee of $2,500 for representation through trial—though the agreement did not specify that the fee would be deemed earned upon receipt or inform McLeod that she would be entitled to a refund of all or part of the fee if Smith did not complete the representation. By

4

early July 2016, McLeod had paid $1,750 of the fee plus $250 for a filing fee. Smith has admitted that he did not deposit any of those funds into his client trust account.

**{¶ 11}** Throughout Smith's representation of McLeod, McLeod emphasized that time was of the essence in filing and pursuing the civil action, and Smith does not dispute that fact. In September 2016, McLeod sent Smith a letter in which she terminated his representation and requested a full refund on the ground that Smith had failed to provide her with any legal representation. Smith responded, promising to diligently represent McLeod, and McLeod allowed him to continue the representation.

**{¶ 12}** Smith did not file a civil action on McLeod's behalf until January 2017, approximately ten months after he was retained to do so. In February 2017, McLeod attempted to terminate Smith's representation a second time. But after speaking with him, she once again permitted him to continue the representation.

**{¶ 13}** Smith was unable to obtain service on the defendant in McLeod's lawsuit by certified mail or first-class mail. At an August 30 case-management conference, the court informed Smith that it would dismiss the case if service was not perfected by the next court date, which was October 17. Smith waited until October 5 to file an affidavit for service by publication, despite his being aware that that process could take more than six weeks. Smith eventually obtained service on the defendant, but the defendant failed to answer the complaint or otherwise appear.

**{¶ 14}** The court set a hearing on default for December 19 and ordered Smith to file a motion for default, to give the defendant seven days' notice of the hearing, and to submit an affidavit of damages and a proposed judgment entry. Smith did not comply with the trial court's order before this court suspended his license to practice law on December 6.

**{¶ 15}** In connection with Smith's prior suspension, this court ordered him to notify all his clients by certified mail that he had been suspended and that they

should seek legal services elsewhere, calling attention to any urgency in seeking new counsel. We further ordered him to deliver the clients' files to them and to refund any unearned portions of the clients' fees.

**{¶ 16}** Smith represented to relator that he had sent a letter to McLeod by certified mail informing her of his suspension, but McLeod denied receiving it, and Smith was unable to produce a copy of the letter or a return receipt for it. Moreover, the affidavit of compliance that he filed with this court on January 4, 2018, did not include a certified-mail tracking number for a letter to McLeod's address.

**{¶ 17}** On December 8, 2017, Smith sent McLeod a text message stating that he had been "temporarily suspended from practicing law" and that he was unable to continue representing her. He also informed McLeod that he would be meeting with another attorney—later identified as Robert Smith III ("Smith III")—about Smith III's taking over her case. The next day, Smith told McLeod that he had given her file to Smith III, who would call her. But Smith III did not contact McLeod and Smith never provided McLeod with Smith III's full name or phone number. At Smith's disciplinary hearing, McLeod testified that she did not hire another attorney because she had thought that Smith III was going to take over her case.

**{¶ 18}** In a December 13, 2017 journal entry, the trial court noted that Smith had been suspended from the practice of law. The entry stated that the court would dismiss McLeod's case for lack of prosecution if she did not obtain new counsel or inform the court that she would proceed pro se by January 22, 2018. Although Smith sent McLeod a text message informing her that she had until January 22 to obtain new counsel or decide to proceed pro se, he did not tell her that she needed to file anything with the court. Instead, he told her, "Don't worry, Mr. Smith [III] will enter an appearance on your case and have the motion filed way before then."

**{¶ 19}** In early December 2017, Smith III agreed to assume responsibility for some of Smith's cases. Smith delivered approximately 25 files, including

6

McLeod's, to Smith III's office and met with Smith III on several occasions to discuss the files. At Smith's disciplinary hearing, Smith testified that he had assumed that Smith III was taking over all the cases that he had delivered to Smith III and that Smith III never told him that he was not taking over the McLeod case. Smith III testified that he worked on at least eight of the cases that he received from Smith but that there was no written confirmation of which files he had agreed to handle.

{¶ 20} On January 8, 2018, Smith sent McLeod a text message stating that Smith III had taken over her case, that he believed that Smith III had already filed the motion for default judgment, and that Smith III would be calling her. However, Smith III never contacted McLeod or entered an appearance in her case.

{¶ 21} The trial court dismissed McLeod's case without prejudice on January 23. After receiving from the court a copy of the entry dismissing her case, McLeod called Smith. Smith told her that he would find out what had happened and would have the "other attorney" call her, but McLeod did not hear back from Smith or the "other attorney."

{¶ 22} In March 2018, McLeod sent Smith a text message inquiring about the dismissal of her case and the accompanying order for her to pay the court costs. She also asked him to send her file to her and to issue a full refund because, according to her, he had done "absolutely nothing on [the] case." Smith replied that he had spoken with "Mr. Smith [III]," who would call her right away to discuss her case. Smith informed McLeod that her case would need to be refiled but that she would not have to pay any additional fees and would eventually "get a judgment." He also told McLeod that he would get her file from Smith III and mail it to her, but he did not send the file to her until three months later. In June 2018, Smith represented to relator that he was prepared to refund McLeod's $1,750 fee in five monthly installments of $300, with a final payment in the sixth month following his reinstatement to the practice of law, but he did not refund any portion

of the fee before his October 2020 disciplinary hearing. McLeod did not pursue her case through another attorney, and she never recovered her late father's property.

{¶ 23} The parties stipulated and the board found that Smith's conduct in the McLeod matter violated Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit advanced legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.16(d) (requiring a lawyer withdrawing from representation to take reasonably practicable steps to protect a client's interest, including giving due notice to the client and promptly delivering to the client all papers and property to which the client is entitled), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal).

{¶ 24} The board also found that Smith's ten-month delay in filing a complaint on McLeod's behalf and his delay in obtaining service on the defendant violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client). In his second objection, Smith objects to that finding, arguing that the record demonstrates that over a five-month period, he made eight separate but unsuccessful attempts to obtain service on the defendant.

{¶ 25} The fact that Smith filed McLeod's complaint more than ten months after he had been retained by McLeod and offered no reason for that delay—despite McLeod's insisting that time was of the essence—is alone sufficient evidence to support the board's finding that Smith failed to act with reasonable diligence and promptness in representing McLeod. In addition, Smith attempted certified-mail service at two addresses even after certified mail previously sent to those same two addresses had already been returned marked "attempted not known" or "unable to forward." And even after the court stated on August 30, 2017, that it would dismiss the case if service was not perfected by October 17, Smith waited more than a

month to initiate the process of service by publication. These facts constitute clear and convincing evidence that Smith violated Prof.Cond.R. 1.3.

{¶ 26} Smith also objects to the board's finding that he failed to comply with this court's December 2017 suspension order, arguing that his communications with McLeod about his suspension and his efforts to obtain new counsel for McLeod constituted substantial compliance with the order. But the evidence shows that Smith did not provide McLeod with all the information required by that order, that he did not timely send her file to her, and that he did not timely refund the unearned portion of her fee. Although Smith referred McLeod's case to another attorney, he did not even provide McLeod with the most basic information—i.e., the attorney's full name and contact information—to enable her to protect her own interests. And in fact, the new attorney was not handling her case. Under these circumstances, we decline to absolve Smith of his duty to comply with the terms of our 2017 suspension order.

{¶ 27} For the reasons stated above, we overrule Smith's second objection and adopt the board's findings of misconduct with respect to this count.

*Count Three—The Huffman Matter*

{¶ 28} On April 23, 2015, Beatrice Huffman retained Smith to represent her in a personal-injury matter. Smith filed a civil action on Huffman's behalf on April 14, 2017, and he continued to represent her until he was suspended in December 2017.

{¶ 29} Although relator charged Smith with five rule violations arising from his representation of Huffman, the panel unanimously dismissed three of those charges based on insufficient evidence. However, the parties stipulated and the board found that Smith's professional-liability insurance had twice lapsed during his representation of Huffman and that he failed to notify her of those facts as required by Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the

lawyer does not maintain professional-liability insurance of a certain amount and to obtain a signed acknowledgment of that notice from the client).

{¶ 30} The board also found that Smith violated Prof.Cond.R. 3.4(c) by failing to notify Huffman of his suspension by certified mail at her correct address, as required under our 2017 suspension order. The board acknowledged that Smith had attempted to send notice of his suspension to Huffman by certified mail, but it found that Smith had sent the notice to Huffman's old address even though she had informed him of her new address in 2016. Smith testified that when the letter was returned to his office, he assumed that it had been returned because Huffman had not signed for it. He took no further steps to serve her with the required notice of his suspension.

{¶ 31} Smith objects to the board's finding that he violated Prof.Cond.R. 3.4(c), arguing that his failure to effectuate notice of his suspension by certified mail was a "relatively minor" violation. He asserts that Huffman had actual notice of his suspension because he told her about it during a telephone conversation immediately after it occurred, which, he says, mitigated any harm caused to Huffman.

{¶ 32} However, the evidence shows that Huffman knew virtually nothing about the status of her case. She testified that she never saw the complaint that was filed and was unaware that Smith had filed it. Although Smith attempted to arrange for Smith III to represent Huffman, Smith did not call to Huffman's attention the urgency of her seeking another attorney, as required by this court's 2017 order. Notice of the urgency of obtaining a new attorney was of the utmost importance, given that Huffman's case was already at risk of dismissal because Smith had missed the trial court's deadline for filing materials in support of Huffman's motion for default judgment. After Huffman failed to appear for a settlement conference in March 2018, the court dismissed her case without prejudice and ordered her to

pay court costs in the amount of $445.80. Based on the record before us, it does not appear that her case was ever refiled.

{¶ 33} On these facts, we find that the actual notice that Smith provided to Huffman regarding his suspension was not a permissible substitute for the communication required under our 2017 suspension order. Smith's failure to alert Huffman of her need to secure new counsel, combined with Smith's failed attempt to secure new counsel on her behalf, deprived Huffman of a near-certain default judgment—and ultimately, any judgment—in her personal-injury case. We therefore overrule Smith's third objection and adopt the board's findings that Smith violated Prof.Cond.R. 1.4(c) and 3.4(c) with respect to this count.

*Count Four—The Payton Matter*

{¶ 34} On September 10, 2012, Smith agreed to represent Alberta Payton in three civil matters. Payton signed a contract for Smith's legal services in which she agreed to pay him a retainer of $4,500, and she made an initial payment of $3,000. By October 2017, Payton had paid Smith an additional $1,560, at least $750 of which was for filing fees associated with her cases. Smith did not deposit the $3,000 payment or any of the advanced filing fees into his client trust account. Smith stipulated that his failure to do so violated Prof.Cond.R. 1.15(c).

{¶ 35} Payton's first case involved claims against the Cuyahoga County probation department and one of its probation officers. She alleged claims of negligent infliction of emotional distress and fraudulent misrepresentation arising from events that occurred between January 2007 and February 2009. Her second case involved claims against the Cuyahoga County psychiatric clinic and a doctor employed by the clinic. She claimed that the defendants had caused her posttraumatic stress as a result of a competency evaluation that they had conducted on her in 2003.

{¶ 36} Smith determined that the statutes of limitations for the claims alleged in both cases commenced in the first half of 2009. However, Smith did not

file complaints regarding those claims until late 2016—more than seven years after the statutes of limitations had commenced and more than four years after Payton had retained him to pursue the claims.

**{¶ 37}** In each of those cases, the defendants filed a motion to dismiss the complaint on the grounds that the claims were barred by the applicable statutes of limitations and that they had immunity under Ohio's Political Subdivision Tort Liability Act, R.C. Chapter 2744. Rather than responding to those motions, Smith voluntarily dismissed both cases pursuant to Civ.R. 41(A).

**{¶ 38}** Although Smith told Payton that he would be dismissing the actions and assured her that he could refile them within one year, he never refiled them. The board found that because the deadline for refiling the probation-department action fell one day before Smith was suspended from the practice of law, the responsibility for refiling that action fell squarely on Smith. Based on his failure to timely refile the action, the board found that he violated Prof.Cond.R. 1.3.

**{¶ 39}** Payton's third case involved a claim challenging Cleveland State University's ("CSU") refusal to readmit her as a candidate to a master's degree program. Smith determined that the statute of limitations for that claim commenced on January 31, 2011, but he waited until January 19, 2017, to file the action. The complaint alleged that CSU, which is a state university, is a county agency.

**{¶ 40}** Several weeks after the complaint was filed, CSU filed a motion to dismiss the action on the ground that the Court of Claims had exclusive jurisdiction over the case because CSU is a state university. Smith did not respond to the motion, and he voluntarily dismissed the case under Civ.R. 41(A) on March 2, 2017. The action was never refiled.

**{¶ 41}** The parties stipulated and the board found that Smith did not complete his representation in any of Payton's cases and did not refund any portion of the $4,960 that she had paid him, in violation of Prof.Cond.R. 1.16(e). The board then considered the intertwined issues of whether Smith had provided competent

12

representation to Payton and whether he had given her enough information about her legal matters to enable her to make informed decisions about the representation.

{¶ 42} At his disciplinary hearing, Smith testified that beginning in 2012 and extending over a long period, Payton informed him of many claims that she wanted him to pursue, including matters involving her siblings, her neighbors, and churches. He testified that regarding those types of issues, he had simply told her that she had no viable causes of action, that she could not prove damages, or that the statutes of limitations had expired. According to Smith, that advice "was unnerving [to] her." He claimed that he had spoken with Payton many times to explain the three cases that he had decided to pursue for her and the potential defenses to her claims, including the statutes of limitations and potential governmental immunity. However, Smith did not produce any letters, emails, or text messages documenting any of those communications, and Payton testified that Smith never talked to her about those issues or suggested that they might make it difficult for her to win her cases.

{¶ 43} Smith acknowledged that he had been "a little bit" concerned about the statutes of limitations, but he stated that he had researched the issue and concluded that he could hold off on filing the lawsuits based on the "theory of continuing harm," which he also referred to as "the discovery of harm" rule. He explained that he had had a "good faith reason to believe that [Payton] was still dealing with and suffering from * * * ongoing damages," which, according to him, extended the statute of limitations.

{¶ 44} In addition, Smith testified that he had "kind of" researched the issue of governmental immunity as a possible defense to Payton's claims, though he "had not fully done the research" and believed that exceptions to that defense might apply. He concluded that the potential defense was not enough to prevent the case from moving forward. When Smith was questioned about his decision to file Payton's claims against CSU in the common pleas court instead of the Court of

Claims, he testified only that he "thought" at the time that he filed the lawsuit that the common pleas court was the proper venue.

{¶ 45} The board did not believe that Smith had performed any meaningful research on those issues as, in its words, "a competent attorney would," and it noted that if Smith's continuing-harm theory were to be accepted, a statute of limitations would never expire in any case in which the plaintiff had suffered a permanent injury that required continuous treatment. Moreover, the board noted that a competent attorney facing the end of a statute-of-limitations period on a claim would file the lawsuit within the shortest statute-of-limitations period that arguably applied or would seek a tolling agreement from the prospective defendant.

{¶ 46} The board determined that after he took on the representation of Payton, "[Smith] had the professional and ethical obligation to make sure he provided her a clear explanation, preferably in writing, about the hurdles in going forward with lawsuits in which the statute of limitations had begun to run years before he even met with her, and years before he was retained to file lawsuits." The board explained that rather than having a "hard talk" with Payton about the realities of her cases, Smith merely accepted her initial $3,000 payment and then took no discernible action on her behalf for four years. Ultimately, the board found that Smith had performed superficial and inadequate research and that his failure to provide Payton with well-reasoned, competently researched advice regarding the viability of her claims prevented her from making an informed decision about the representation, in violation of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client) and 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), and it found that those violations were intertwined.

{¶ 47} Smith objects to the board's findings that he violated Prof.Cond.R. 1.1, 1.3, and 1.4(b) with respect to this count. In support, he asserts that his delay

in filing Payton's civil actions was justified because (1) his research revealed a theory under which the statutes of limitations were tolled, (2) he had a "well-founded belief in his research," and (3) he talked with Payton about her cases and informed her about the deadlines for refiling them. However, Smith has produced no evidence, other than his own testimony, demonstrating that he conducted anything more than cursory research or ever informed Payton about the significant impact that the statutes of limitations and the defense of governmental immunity could have on her legal claims. We are not aware of any rule that tolls the statutes of limitations in a negligence or personal-injury case based on the plaintiff's permanent injury or "continuing harm," as Smith claimed existed. Furthermore, the panel heard conflicting evidence about Smith's conversations with Payton regarding the viability of her claims, and it found Payton's testimony on that issue more credible. We defer to those credibility determinations because the panel members saw and heard the witnesses firsthand and the record does not weigh heavily against those determinations. *See, e.g.*, *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 48} Based on the foregoing, we overrule Smith's fourth objection and adopt the board's findings that Smith's conduct in the Payton matter violated Prof.Cond.R. 1.1, 1.3, 1.4(b), and 1.16(e).

### Recommended Sanction

{¶ 49} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 50} The parties stipulated to one aggravating factor—that Smith has a record of prior discipline. *See* Gov.Bar R. V(13)(B)(1). The board accepted that stipulation and noted that Smith engaged in some of the types of misconduct for which he was previously disciplined—namely, failing to diligently represent

clients, failing to deposit funds into his client trust account, and making a false statement to a tribunal. The board also found that Smith engaged in a pattern of misconduct, committed multiple offenses, caused harm to vulnerable clients, and failed to make restitution. *See* Gov.Bar R. V(13)(B)(3), (4), (8), and (9).

**{¶ 51}** As for mitigating factors, the board adopted the parties' stipulations that Smith did not possess a dishonest or selfish motive and exhibited a cooperative attitude toward the disciplinary proceedings by entering into numerous stipulations of fact and misconduct. However, the board declined to accord any mitigating effect to the letters of four attorneys attesting to Smith's good character and reputation because only one of those attorneys demonstrated any knowledge of Smith's prior discipline or the allegations in this case.

**{¶ 52}** Although Smith admitted in March 2020 that he owed restitution in the amounts of $2,000 to McLeod, $443.80 to the Cuyahoga County Common Pleas Court for the costs assessed to Huffman, and $4,960 to Payton, he did not make that restitution before his October 2020 disciplinary hearing. By January 6, 2021, he had made full restitution to McLeod and a $500 payment to Payton. And in its response to Smith's objections to the board's report, relator has acknowledged that only the $443.80 in court costs assessed to Huffman remains unpaid. However, the board attributed little or no mitigating effect to Smith's payment of restitution because it was not timely made. *See, e.g.*, *Disciplinary Counsel v. Sarver*, 163 Ohio St.3d 371, 2020-Ohio-5478, 170 N.E.2d 799, ¶ 31-32 (according no mitigating effect to the respondent's attempt to make restitution because the attempt was made only one week before his disciplinary hearing).

**{¶ 53}** In determining the appropriate sanction for Smith's misconduct, the board considered three cases that Smith advanced in support of his argument for a fully stayed suspension—*Akron Bar Assn. v. Glitzenstein*, 154 Ohio St.3d 557, 2018-Ohio-3862, 116 N.E.3d 1252; *Disciplinary Counsel v. Guinn*, 150 Ohio St.3d

92, 2016-Ohio-3351, 79 N.E.3d 512; and *Cleveland Metro. Bar Assn. v. Mariotti*, 158 Ohio St.3d 522, 2019-Ohio-5191, 145 N.E.3d 286.

{¶ 54} The board distinguished this case from *Glitzenstein* and *Guinn* on the ground that the attorneys in those cases had no prior disciplinary violations. *See Glitzenstein* at ¶ 5; *Guinn* at ¶ 12. The board acknowledged that in *Mariotti*, we imposed a conditionally stayed one-year suspension on an attorney who had a record of prior discipline and who failed to act with reasonable diligence, lied to a client about the status of the client's case, and failed to cooperate in the ensuing disciplinary investigation. *Mariotti* at ¶ 11, 12, 23, 28. However, Mariotti's prior suspensions were for continuing-legal-education and attorney-registration violations, and his subsequent misconduct was tempered by his cooperation in the disciplinary process *and* his genuine remorse. *Id.* at ¶ 1, 21.

{¶ 55} In this case, the board credited Smith for his cooperation in the disciplinary process and acknowledged his testimony stating that he had learned his lesson about falsely notarizing documents and could have done a better job of transferring his clients' files to another attorney. However, the board also found that throughout the disciplinary proceedings, Smith offered many excuses for his misconduct and attempted to cast blame on his clients and Smith III—actions that it found to be inconsistent with an expression of genuine remorse.

{¶ 56} The board found that the facts of this case were most comparable to two cases in which we required the attorneys to serve actual suspensions for misconduct similar to that involved here—namely, *Warren Cty. Bar Assn. v. Marshall*, 113 Ohio St.3d 54, 2007-Ohio-980, 862 N.E.2d 519 (imposing a two-year actual suspension on an attorney who had a record of prior discipline, neglected a client matter, failed to carry out a contract of employment, and lied to the relator's investigator about the status of his attorney registration), and *Trumbull Cty. Bar Assn. v. Large*, 134 Ohio St.3d 172, 2012-Ohio-5482, 980 N.E.2d 1021 (imposing a two-year suspension with six months conditionally stayed on an

attorney for client-neglect and trust-account violations in three client matters, dishonesty, and failure to comply with the terms of his prior suspension order that required the attorney to notify his clients of his suspension and to return their files and unearned retainers).

{¶ 57} Because Smith's previous suspension of 18 months with 12 months conditionally stayed for misconduct similar to that involved here did not deter him from reengaging in such misconduct, the board believed that a lengthier suspension was necessary to protect the public, help preserve the public's trust in the legal profession, and motivate Smith to correct his behavior. The board therefore recommends that we suspend Smith from the practice of law for two years, with the final six months conditionally stayed, and that we impose certain conditions on his reinstatement.

### Smith's Objections to the Sanction Recommended by the Board

{¶ 58} Smith objects to the board's recommended sanction. He argues that the board should have attributed mitigating effect to his payment of restitution, his expression of remorse for his misconduct, and the character letters submitted on his behalf. Smith further attempts to distinguish the facts of this case from those of *Marshall* and *Large* and maintains that his misconduct warrants only a fully stayed two-year suspension comparable to those imposed in *Glitzenstein*, *Guinn*, and *Mariotti*. We disagree.

{¶ 59} Despite Smith's arguments to the contrary, the evidence supports the board's findings that Smith's efforts to make restitution were untimely and that his expressions of remorse were outweighed by his attempts to blame others for his failure to protect his clients' interests following his December 2017 suspension. The evidence likewise supports the board's determination that just one of Smith's character witnesses offered any indication of being aware of Smith's prior misconduct or the current charges against him, and the mitigating effect of that single letter is negligible at best. Smith now asserts that the authors of the three

other letters were friends and colleagues of his who were aware of his *past* disciplinary proceedings—but he does not suggest that the authors were aware of the charges in *this* case when they offered their opinions regarding his character and reputation. We do not accept Smith's belated, incomplete, and self-serving statements regarding the knowledge possessed by those character witnesses as evidence to bolster the credibility of their statements. We therefore conclude that the board properly declined to attribute mitigating effect to Smith's payment of restitution, purported remorse, and evidence of his good character and reputation.

{¶ 60} We have already rejected Smith's objections to the board's findings of misconduct and have adopted the board's findings that Smith committed all seven of the stipulated rule violations, plus *eight* others. These violations include Smith's knowingly making a false statement of fact to a tribunal, engaging in dishonesty and conduct prejudicial to the administration of justice, and knowingly disobeying our 2017 suspension order by failing to provide certain notices regarding his suspension to two clients by certified mail. In addition, Smith neglected the matters entrusted to him by McLeod and Payton, failed to provide competent representation to Payton, and failed to explain Payton's matters to her to the extent reasonably necessary for her to make informed decisions regarding the representation. These violations render Smith's misconduct far more serious than the conduct for which we imposed fully stayed suspensions in *Glitzenstein*, *Guinn*, and *Mariotti*.

{¶ 61} Next, Smith challenges the board's finding that his misconduct is comparable to that at issue in *Marshall*, 113 Ohio St.3d 54, 2007-Ohio-980, 862 N.E.2d 519. Smith notes that we attributed aggravating effect to Marshall's pattern of misconduct in which he repeated some of the same offenses for which he had previously been disciplined, *id.* at ¶ 13. Smith contends that he could not have engaged in a pattern of misconduct similar to his prior misconduct, because his mishandling of McLeod's and Payton's payments occurred *before* he was aware of

the allegations of misconduct in his prior disciplinary case. But even if that were true with respect to most—if not all—of Smith's mishandling of McLeod's and Payton's payments, there can be no doubt that Smith continued to engage in dishonesty and make misrepresentations to a court *after* he admitted to similar rule violations in his prior disciplinary case. Smith's false notarization and filing of Lattimore's plea-in-absentia form occurred more than three months after he signed and the parties filed a consent-to-discipline agreement in his first disciplinary case, wherein he admitted that he knowingly made false statements of fact to a tribunal. On these facts, we accept the board's finding that Smith, like Marshall, continued to engage in some of the misconduct for which he had been previously disciplined.

{¶ 62} Smith also attempts to distinguish his misconduct from that at issue in *Large*, 134 Ohio St.3d 172, 2012-Ohio-5482, 980 N.E.2d 1021, on the ground that *Large* involved multiple aggravating factors that are not present in this case. He notes that Large acted with a selfish motive, failed to cooperate and made false statements in the disciplinary proceedings, and that his vulnerable clients were forced to represent themselves or obtain new counsel, *id.* at ¶ 29. We acknowledge that Smith cooperated in these disciplinary proceedings and that he has not been found to have acted with a selfish motive or to have made false statements during them. But we do not find that Smith left his vulnerable clients in a better position than Large left his.

{¶ 63} Although Smith informed his clients that he had been suspended from the practice of law, he deprived them of the opportunity to protect their own interests by failing to provide all the notices required under our 2017 suspension order (i.e., calling attention to any urgency in their pending legal matters, turning over their files, and refunding the unearned portions of their fees). And after Smith had voluntarily undertaken the responsibility of obtaining new counsel for the clients, he did not get *any* confirmation from Smith III that Smith III had agreed to accept the McLeod, Huffman, or Payton cases—in writing or otherwise. He also

failed to give two of those clients Smith III's full name and contact information in order to enable them to communicate directly with Smith III, even as he repeatedly assured them that Smith III was taking action on their behalf.  Furthermore, Smith failed to advise and encourage those clients to seek new counsel—even after it became evident that Smith III had not worked on their cases and had stopped responding to Smith's communications.  Thus, Smith's conduct made his clients even more vulnerable than they would have been if he had simply complied with our suspension order and left them to fend for themselves.

**{¶ 64}** After thoroughly reviewing the record, we agree with the board's assessment that the significant aggravating factors in this case greatly outweigh the few mitigating factors.  We also accept the board's determination that an actual suspension greater than the suspension imposed in Smith's first disciplinary case is necessary to (1) impress upon Smith the importance of honesty, integrity, and diligence, (2) protect the public from future harm, and (3) preserve the public's trust in the legal profession.  A more severe sanction is particularly appropriate here given that in Smith's first disciplinary case, he benefitted from a 12-month stay of his 18-month suspension and was reinstated to the practice of law even though he had failed to fully comply with the terms of our suspension order.  Based upon the foregoing, we overrule Smith's objections and adopt the board's recommended sanction.

### Conclusion

**{¶ 65}** Accordingly, Samuel Ray Smith II is suspended from the practice of law for two years, with the final six months stayed on the conditions that he commit no further misconduct and pay the costs of these proceedings.  If Smith fails to comply with the conditions of the stay, the stay will be lifted and he will serve the entire two-year suspension.

**{¶ 66}** In addition to the requirements for reinstatement set forth in Gov.Bar R. V(24) and the continuing-legal-education ("CLE") requirements set forth in

Gov.Bar R. X, Smith shall complete at least three hours of CLE focused on client-trust-account management and at least six hours of CLE focused on law-office management, and within 90 days of this order, Smith shall submit proof that he has made restitution of $445.80 to the Cuyahoga County Court of Common Pleas for the costs assessed in *Huffman v. Greater Cleveland Regional Transit Auth.*, Cuyahoga C.P. No. CV 17 878978. Upon his reinstatement to the practice of law, he shall be required to work with a monitoring attorney designated by relator for a period of one year. Costs are taxed to Smith.

Judgment accordingly.

KENNEDY, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., and FISCHER and BRUNNER, JJ., would impose an additional 12-month suspension.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Audrey E. Varwig and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A., and Nelson E. Genshaft, for respondent.

_____